[No. 10035.    Department Two.—February 20, 1896.]

## F. JOOST et al.., Respondents, *v.* EUGENE SULLIVAN et al., Appellants.

Mechanics' Liens—Filing of Claim—Completion of Building — Occupation by Owner — Repairs — Trivial Imperfections — Finding against Evidence.—Where the lien of a subcontractor was not filed within thirty days after the completion of the building, it cannot be enforced; and a finding that the building was not completed, until within thirty days prior to the filing of the claim, is not sustained by the evidence, where there is positive testimony to the contrary, and where it appears that the building had been occupied by the owner and by a tenant for more than thirty days prior to the filing of the claim; and evidence showing a repair of the completed work and the correction of trivial imperfections, such as the putting on of a mislaid doorknob and the rim of a bathtub within the thirty days, does not raise a substantial conflict in support of the finding.

Id.—Unrecorded Contract—Occupation of Building—Test of Completion.—Although the original contract may be void for want of a record, the occupation of the building by the owner furnishes a test of the completion of the work as against the claimant of a lien, when not explained, and is conclusive upon the owner when necessary to sustain liens filed upon the strength of the occupancy.

Id. — Record — Sufficiency of Memorandum — Signature — Specifications—General Character of Work.—The record of a memorandum

of a contract for the erection of a building is sufficient when the memo-
randum sets forth the names of all the parties to the contract and a
general statement of the character of the work to be done, and is
not rendered insufficient because the memorandum is not signed, nor
because plans and specifications are not filed therewith, if none are re-
ferred to in the memorandum; nor because there is no detailed descrip-
tion of the work to be done; and where the statement of the general
character of such work is made in good faith and sets forth the size of
the lot, and that a frame building already thereon is to be raised, re-
paired, and additions made thereto, and converted into flats for the
purpose of being used as tenements, the memorandum is a substantial
and sufficient compliance with the statute.

ID.—OBJECT OF AMENDMENT AS TO RECORD OF MEMORANDUM—CONSTRUC-
TION OF STATUTE.—The design of the amendment, allowing the record
of a memorandum of the contract, was to require less than was required
before; and its language is to be construed in the light of the purpose
to be effected by the filing of anything giving information of the con-
tract between the owner and the original contractor; and the provision
for a description of the "general character" of the work cannot be con-
strued to require a special, particular, minute or detailed description of
the work to be done.

ID.—CONSTRUCTION OF REMEDIAL AND PENAL PROVISIONS—COMPLIANCE—
BENEFIT OF DOUBT.—The statute in imposing a liability upon the owner
beyond the price he contracted to pay in favor of a subcontractor, is penal
as well as remedial, and while it must be reasonably construed to effectu-
ate its remedial purposes, it must be strictly construed as respects its
penal character, and no merely technical construction can be indulged
in favor of visiting a penalty upon the owner, where there has not been
a substantial failure to comply with the law, such as, if continued, would
defeat its remedial purposes; and if there be a reasonable doubt as
to the construction of the statute, or as to whether defendants have
complied with it, they should have the benefit of the doubt.

ID.—EVIDENCE OF VALUE—EXTRA WORK—CONTRACTS.—Where the re-
corded memorandum of the original contract is sufficient, the contract
between the contractor and subcontractors is conclusive as to the value
of the work done under them and also as to extra work, so far as they
fix the value; but where the original contract, or a sufficient memoran-
dum thereof, is not filed in accordance with the statute, the contract
price agreed between the contractor and subcontractors is evidence of
value, but may be rebutted; but in a case where the value of extra
work is not fixed by the contract, other proof of value must be made.

ID.—ACTION TO FORECLOSE LIENS—DEATH OF OWNER—SUBSTITUTION OF
ADMINISTRATOR—TESTIMONY OF PLAINTIFFS.—In an action to foreclose
the lien of subcontractors against the owner of the building, the death
of the owner, and the substitution of his administrator as a party de-
fendant, does not render the plaintiffs incompetent to testify as wit-
nesses upon the trial of the cause.

APPEAL from a judgment of the Superior Court of
the City and County of San Francisco and from an
order denying a new trial.   JAMES M. TROUT, Judge.

The facts are stated in the opinion.

*Stafford & Stafford*, for Appellants.

It is necessary for plaintiff to allege and prove that the notice of lien was filed within thirty days after the completion of the building. (*Slight* v. *Patton*, 96 Cal. 384; Code Civ. Proc., sec. 1187; Phillips on Mechanics' Liens, sec. 331.) If the lien can be filed notwithstanding trivial imperfections, it must follow that the claimant can foreclose his lien, and that the trivial imperfections in the work are no defense to the action. (Code Civ. Proc., sec. 1187; *Harlan* v. *Stufflebeem*, 87 Cal. 512.) Substantial completion alone is required. (*Harlan* v. *Stufflebeem, supra; Willamette etc. Co.* v. *Los Angeles College Co.*, 94 Cal. 237, 238; *Santa Clara Valley etc. Co.* v. *Williams* (Cal.), 31 Pac. Rep. 1128; *Lippert* v. *Lvr* (Cal.), 33 Pac. Rep. 797.) When the building contract makes the plans and specifications a part of it, the entire contract consists of such plans and specifications and the articles of agreement, and in order to record the " contract," the whole three documents must be recorded. (*Holland* v. *Wilson*, 76 Cal. 434; *Willamette etc. Co.* v. *Los Angeles College Co.*, 94 Cal. 229; *Yancy* v. *Morton*, 94 Cal. 558.) Under the amendment of 1887 to section 1183 of the Code of Civil Procedure providing that the contract might be filed or a memorandum thereof, it is not necessary to file the plans and specifications. (*Butterworth* v. *Levy*, 104 Cal. 506.)

*John Heenan*, for Respondents.

The actual contract is admissible as proof of the value of materials and services. (*Adams* v. *Burbank*, 103 Cal. 646.) An answer on information and belief admits contracts as pleaded, the facts being presumably within the knowledge of the defendant. (*Loveland* v. *Garner*, 74 Cal. 298.)

HAYNES, C.—Action to foreclose subcontractors' liens. Pending the litigation the claim of Joost Brothers was

paid, and the only defendants served were Eugene and Kate Sullivan. The claims of Byron and Bayreuther were sustained by the court, and from the judgment enforcing their liens and from an order denying a new trial this appeal is prosecuted.

Eugene Sullivan was the owner, and his wife, Kate Sullivan, was made a party, the complaint alleging that she claimed some interest in the property. Eugene Sullivan died before the trial, and Kate Sullivan, having been duly appointed administratrix of his estate. was substituted, as such administratrix, in his stead; and as such, and as an individual, has taken this appeal.

A contract was made by Eugene Sullivan with one Westcott to raise, make alterations, additions, and repairs to a two-story frame building upon a lot situate at No. 625 Natoma street, city of San Francisco. Plaintiffs alleged that neither said contract nor any memorandum thereof was ever filed in the recorder's office; "that said building was completed on or about the fourteenth day of October, 1891, and further alleged the filing of their respective liens before the expiration of thirty days from and after the completion of the building."

The answer denied each of these allegations, and alleged that the building was completed on October 10, 1891. Bayreuther's notice of lien was filed November 11, 1891, and Byron's on November 12th; and, therefore, if the building was completed on October 10th, both claims were filed too late.

The court found that neither the contract nor any memorandum thereof was filed, and that the building was completed on October 14th, and appellant contends that these findings are not justified by the evidence.

Byron's subcontract was for the brickwork, for which he was to receive two hundred and thirty-five dollars, and his work was finished September 24, 1891. He testified that he was at the house (the building in question) on October 14th; that it was then completed; that he did not know how long before that it had been completed; that he could not say when, prior to October 14th, was.

the last time he had been there, and that he did not know whether it was completed before October 14th or not.

Mr. Bayreuther testified that he furnished the material for four closets, two bathtubs, the kitchen sinks, etc., that he furnished the materials and completed the work which included all the plumbing in the building according to the specifications, and did some extra work which consisted of tinning in gutters and one extra gas-fitting in the two lower flats, and that he completed his work on October 3d; that he saw the building on October 11th and 14th; that the contractor took his tools away on the 14th; that he was called there on Sunday morning, October 11th, by Miss Sullivan because one of the closets in the building made a rattling noise, and he sent a man there on the 12th to repair it; that he went the next day to see if everything was all right, and saw the contractor moving his tools away; that " the building was completed that day. The alterations consisted of raising an old house, making three flats of it—two upper and one lower flat. The defendants were living at that time in the upper flat." He further testified that when he called there Sunday morning, October 11th, there was a doorknob not on in the upper flat, and a rim to a bath on the lower flat had not been put on, and did not observe anything else unfinished; that putting on the doorknob and rim of the bathtub was not his work; that the closet was not broken, but made a noise; that he had an agreement that in case anything was wrong with the closets he would repair them. and make them in good order, and that he formed the conclusion that the building was completed on the 14th from what others told him, and from seeing the contractor moving his tools away. Mr. Westcott, the contractor, was not subpœnaed by the plaintiffs, and was not at the trial.

M. J. Welch, the architect in charge of the work, was called by plaintiff and testified as to other matters, but was not examined as to the date of the completion of the work, and plaintiffs thereupon rested.

Mr. Welch was then called for defendants, and testified that the building was completed on the 8th or 9th of October. Upon cross-examination he testified that he was sure it was the 8th or 9th, because it took him several days to straighten out the business affairs before he issued the certificate for the payment which was to be made upon completion of the work; that he delayed because there was a doubt about the contractor paying his bills; that he wished to find out how his bills stood and see that things were straightened out before the certificate was issued; that he was fully a week going to the bondsmen and seeing the creditors, and that it was fully a week after the building was completed before he issued the certificate, and the certificate was dated and issued October 15, 1891. He further testified that the building was partly occupied by the defendant and his family the first week of October, 1891.

Miss Ella Sullivan testified that she was living with her parents in the house when she sent for Mr. Bayreuther on October 11th; that Westcott was there when Bayreuther called; that the house was then completed and the men had all gone away except Westcott; that they were then living on the upper floor; that the locks mentioned were on the old work and not on the new; and that Westcott did not take his tools away until the 14th because he was waiting for someone to lend him a horse and wagon for that purpose.

Mrs. Kate Sullivan, one of the defendants, testified that the house was completed before Bayreuther was called to fix the closet, and she was then occupying the upper floor, and the ground floor was also rented and occupied. Upon cross-examination she testified that it was completed a week before Bayreuther called, but afterward changed the time to a week, or maybe more, before she paid the third payment, which was on October 15th. The foregoing is the substance of all the evidence relating to the date at which the building was completed.

The finding that the date of completion was October

14th is not justified by the evidence. Byron testified that he did not know whether it was completed before that date or not. Bayreuther completed his contract on October 3d, and there is no evidence that any work was done on the building after that date, except fixing a closet which " made a noise," and which was confessedly the " repair" of his completed work. Under these circumstances the testimony of the plaintiffs could only be regarded as showing that the building was in a completed state or condition on the 14th, and not that the work ended on that day, and therefore does not conflict with the positive testimony of the architect and of Mrs. Sullivan and her daughter that it was completed at least as early as the 10th. Besides, the putting on of a doorknob which appears to have been mislaid, and of the rim of a bathtub, were in themselves "trivial imperfections" which would not have invalidated plaintiffs' liens if they had filed them on Monday, the 12th. (*Harlan* v. *Stufflebeem,* 87 Cal. 508.)

Not only so, but the building was actually occupied by the owner and by a tenant before the 11th, and this was evidence of the completion of the work under Westcott's contract, and its acceptance by the owner, which is conclusive upon the plaintiffs, when not explained, and would also, under the like condition, have been conclusive upon the owner if necessary to sustain the plaintiffs' liens filed upon the strength of such occupancy. (*Giant Powder Co.* v. *San Diego Flume Co.,* 78 Cal. 196.) If it be conceded that the contract between the owner and Westcott were void because not recorded, it would, nevertheless, furnish a test of completion. (*Barker* v. *Doherty,* 97 Cal. 10, 12.) If, however, it had been shown that notwithstanding the trivial character of the uncompleted work described by Bayreuther, that work actually continued thereon and was completed on the 14th, the finding would have been sustained.

Appellants also contend that the third finding to the effect that neither the contract between the owner and

contractor, nor a memorandum of it containing the matters required to be stated therein, was ever filed.

A memorandum of the contract was filed, and the only question is as to its sufficiency. The memorandum having been put in evidence, the finding should have set it out, leaving its sufficiency to be found as a conclusion of law.

It is contended by respondents that it is insufficient in that it was not signed; that neither plans nor specifications, nor their equivalent, were filed, and that it does not show the general character of the work.

So much of the memorandum as is material to the objections made is as follows: "Know all men by these presents: That a contract has been entered into for raising, making alterations, additions, and repairs to the two-story frame-house building to be used for tenements, situate, etc. [describing the lot]. That the names of all parties to said contract are as follows: Eugene Sullivan and C. W. Westcott. That the following is a statement of the general character of the work to be done under said contract, to wit, raising, making alterations, additions, and repairs to a two-story frame building to be used for two tenements, situated as above stated, and prosecuted under the direction of M. J. Welch, architect." Then follows a perfect statement of the total amount to be paid, the amount of each of the partial payments, and when they are to be made, and attached thereto was a bond executed by two sureties that Westcott would perform his contract.

That part of section 1183, necessary to be considered, is as follows: "All such contracts shall be in writing when the amount agreed to be paid thereunder exceeds one thousand dollars, and shall be subscribed by the parties thereto, and the said contract, or a memorandum thereof, setting forth the names of all the parties to the contract, a description of the property to be affected thereby, together with a statement of the general character of the work to be done, the total amount to be paid thereunder, and the amounts of all partial pay-

ments, together with the times when such payments shall be due and payable, shall, before the work is commenced, be filed in the office of the county recorder of," etc.

It is not necessary that the memorandum should have been signed or subscribed by the parties. The statute requires that the *contract* "shall be subscribed by the parties thereto," but only requires that the *memorandum* shall "set forth the names of all the parties to the contract." The names of the parties are stated, and it further stated that they are all the parties to the contract. This follows the statute and is sufficient in that respect.

It is said, however, that neither plans nor specifications were filed. The memorandum does not disclose that there were any, and therefore this case is distinguishable from the cases where the memorandum was held insufficient because plans and specifications were referred to as part of the statement of the general character of the work to be done, and yet were not filed with the memorandum in which the reference was made. This was the case in *Willamette etc. Co.* v. *Los Angeles College Co.*, 94 Cal. 235, 236, and in *Butterworth* v. *Levy*, 104 Cal. 509, and in *Wood* v. *Oakland etc. Transit Co.*, 107 Cal. 503. The question, therefore, is whether the memorandum states "the general character of the work to be done."

If the statute had omitted the words last above quoted, and had simply said that the contract, or a memorandum of it, should be filed, it would have been understood that the word "memorandum" *ex vi termini* implied that it need not contain a full and particular statement of the contract. Webster defines it thus: "(Law.) A brief note in writing of some transaction, or an outline of some intended instrument; an instrument drawn up in brief and compendious form."

Before the amendment of 1887 the statute imperatively required that the "contract be filed"; and as the plans and specifications—whenever referred to, at

least—were part of the contract, it was properly held that the plans and specifications must also be filed. It is apparent that the design of the amendment was to require less than was required before. How much less must be determined from the language used, construed in the light of the purpose to be effected by the filing of anything giving information of the contract between the owner and the original contractor.

The words " general character " do not mean a special, particular, minute, or detailed description of the work to be done. The adjective " general," as defined in Webster's Dictionary, means: " 1. Relating to a genus or kind; pertaining to a whole class or order; belonging to a whole rather than to a part; . . . . 3. Not restrained or limited to a precise or detailed import; not specific; lax in signification"; and of the noun " character " he gives, as applicable here, " 9. Account; description."

The definition given of the word " general " in Black's Law Dictionary, so far as pertinent, is: " Universal, not particularized; as opposed to special." The same author defines the word "character" only as applied to individuals, but it is nevertheless pertinent here. "The aggregate of the moral qualities which belong to and distinguish an individual person; the general result of one's distinguishing attributes."

Other cases are cited by respondent where the memorandum was held insufficient because it did not state for what purpose the building was intended; or did not state the kind of building, as " frame " or " brick " or " stone."

Here the size of the lot, twenty-five by seventy-five feet, is given, that a frame building already thereon is to be raised, repaired, and additions made thereto, and converted into flats for the purpose of being used as tenements. This is quite sufficient as a statement of "the general character of the work to be done." It is not claimed that the memorandum was fraudulently

made, or that plaintiffs, as subcontractors, were misled or deceived or injured because of any imperfection in it. It must therefore be assumed that the owner intended in good faith to comply with the statute, and believed that he had done so.

The statute, imposing as it does a liability upon the owner beyond the price he contracted to pay, in favor of a subcontractor with whom he has no contract relations, is penal as well as remedial, and, therefore, whilst it must have such construction as will reasonably effectuate its remedial purposes, must be strictly confined to such purpose. No merely technical construction can be indulged for the purpose of visiting a penalty upon the owner, unless there has been a substantial failure to comply with the law; such as, if continued, would defeat the remedial purposes of the statute; but if there be a reasonable doubt as to the construction of the statute, or as to whether the defendants complied with it, they should have the benefit of it. (Sutherland on Statutory Construction, 444; *Chase* v. *New York Cent. Ry.*, 26 N. Y. 523, 525; *Shanklin* v. *Gray*, ante, p. 88. The memorandum in this case was a substantial and sufficient compliance with the statute.

As the case must be remanded one or two other questions should be noticed. Appellant claims that there was no evidence of the reasonable value of the work done by the plaintiffs. As the memorandum of the contract between Westcott and the owner is sufficient, the contracts between the contractor and the subcontractors are conclusive, both as to their principal contracts and as to contracts for extra work, so far as they fixed the value. Where the value was not fixed by contract other proof of value must be made. To prevent misapprehension it may be added that, if the memorandum filed was not in compliance with the statute, the contract price agreed by the contractor to be paid to the subcontractors is evidence of value, but such evidence may be rebutted. (See *Booth* v. *Pendola*,

88 Cal. 36.) Plaintiffs were competent witnesses notwithstanding the death of Sullivan. (*Booth* v. *Pendola, supra.*)

No other questions discussed by counsel need be noticed.

The judgment and order appealed from should be reversed and the cause remanded for a new trial.

VANCLIEF, C., and BRITT, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order appealed from are reversed and a new trial granted.

TEMPLE, J., HENSHAW, J., McFARLAND, J.